IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REV. DR. CHRISTOPHER ALAN BULLOCK<br><br><br>Plaintiff,<br><br>v.<br><br>GOVERNOR JOHN C. CARNEY, individually and in his official capacity as the Governor of Delaware<br><br><br>Defendant. | Civil Action No. 20-674-CFC |

## **MEMORANDUM OPINION**

May 29, 2020
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Pending before me is Plaintiff Dr. Christopher Alan Bullock's motion for a temporary restraining order.  D.I. 3.

## I.   BACKGROUND

Dr. Bullock, the Founder and Pastor of the Canaan Baptist Church in Wilmington, Delaware, D.I. 1 ¶¶ 3, 5, filed this lawsuit on May 19, 2020, D.I. 1. Delaware's Governor, John C. Carney, is the sole defendant named in the Verified Complaint.  D.I. 1 at 1.  Dr. Bullock alleges in the Verified Complaint that certain emergency orders issued by the Governor in response to the current coronavirus pandemic have deprived and continue to deprive Dr. Bullock of his rights to exercise freely his religion and enjoy equal protection under the laws as guaranteed by the First and Fourteenth Amendments of the Constitution.  D.I. 1 ¶¶ 95–144.

The first of the orders in question, the State of Emergency Declaration, was issued on March 13, 2020.  D.I. 15, Ex. 1.  The novelty and speed of the coronavirus and the existential threat it poses have created an ever-changing crisis. Each day if not hour, doctors and scientists offer new and sometimes contradictory opinions about the nature of the virus and how best to treat it and slow its spread. Understandably, then, to date the Governor has issued 19 Modifications to his original state of emergency declaration.  *See* Office of the Governor, Public Health

State of Emergency Declarations, https://governor.delaware.gov/health-soe/ (last visited May 29, 2020).  By its terms, each Modification has the force and effect of law, and failure to comply with a Modification constitutes a criminal offense under Delaware law.

On April 6, 2020, the Governor issued his Tenth Modification.  D.I. 15, Ex. 5.  Paragraph 1.e of the Tenth Modification expressly prohibited "houses of worship and other places of religious expression or fellowship" from holding "under any circumstances" in-person services attended by more than ten people. D.I. 15, Ex. 5 ¶ 1.e; D.I. 1 ¶ 47.

The prohibition of in-person religious services involving more than ten people was in effect on May 13, 2020 when Dr. Bullock and other members of the Committee to Save Christmas sent the Governor what Dr. Bullock calls "The Demand Letter."  D.I. 1 at 15; D.I. 1 ¶ 64; D.I. 1, Ex. E at 1.  The Committee alleged in the Demand Letter that the Governor's State of Emergency and the Modifications, including the Tenth Modification, that had been issued as of May 13th "illegally discriminated against religious worship" in violation of the First and Fourteenth Amendments of the Constitution.  D.I. 1, Ex. E at 1.

On May 18, 2020, the Governor issued the Eighteenth Modification, to become effective on May 20, 2020.  D.I. 4, Ex. Tab A.  This Modification, which remains in effect today, struck paragraph 1.e of the Tenth Modification "in its

entirety" and in its place issued a provision that "permit[s]" houses of worship to hold in-person services "as long as all applicable social distancing and hygiene rules in effect . . . are followed" and either (1) attendance at the service is limited to ten or fewer people or (2) attendance at the service is limited to 30% of the stated fire code occupancy of the building in which the service was held *and* the service "satisf[ies] the requirements" of the "Guidelines for Safe Worship" issued by the Delaware Division of Public Health (DPH). *Id.* ¶ A.2.

DPH issued its first set of "guidelines" under the heading "Guidance for Communities of Worship" the same day the Governor signed the Eighteenth Modification. D.I. 1, Ex. F. To be clear, both "Guidance" and "Guidelines" are misnomers, as many of the provisions issued by DPH on May 18th were mandatory and therefore, under the terms of the Eighteenth Modification, carried the force of law and could have resulted in criminal penalties if not followed. Tr. 14:2–8. The May 18th Guidance, for example, prohibited religious organizations from holding services on more than one day a week and from allowing any service to exceed 60 minutes in length. D.I. 1, Ex. F at 1. It also barred persons over 65 years old from attending religious services, *id.* at 1, and it made it illegal to hold a microphone during a religious service and to have a choir participate in the service, *id.* at 2. In addition, the May 18th Guidance made it criminal to administer Communion "person-to-person," *id.* at 3, to use religious hymnals and prayer

3

books during a religious ceremony, *id.*, and to hold a person during a baptism, *id.* at 4.

Dr. Bullock filed his Verified Complaint on May 19th. D.I. 1. The Verified Complaint discusses the Governor's State of Emergency Declaration and Modifications and the May 18th Guidance, D.I. 1 ¶¶ 36, 38, 40, 42, 79–81; and it alleges that the prohibitions and restrictions set forth in the Eighteenth Modification and May 18th Guidance violate the Establishment Clause of the First Amendment and infringe Dr. Bullock's constitutional rights to free exercise of religion, speech, assembly, association, and equal protection under the laws, D.I. 1 ¶¶ 95–144.

Late in the afternoon on Friday, May 22nd, Dr. Bullock filed the motion for a temporary restraining order now before me. D.I. 3. Dr. Bullock requests by his motion that I issue an order before May 31, 2020 to "enjoin and restrain" the Governor and any state actor from enforcing against "[Dr. Bullock] and those he represents" the State of Emergency Declaration; certain Modifications to that Declaration, including the Eighteenth Modification; and DPH's guidelines, including the May 18th Guidance. D.I. 3, Ex. 1 at 1–2. Dr. Bullock states in his motion that he "seeks to preserve a status quo defined by the Fourth Modification of the State of Emergency . . ., with definition as an 'Essential Business' to operate under the relevant 'Responsibilities of an Essential Business' safety guidelines

4

found at pages 4-5 of section 5 of that Order, which apply to 237 other 'Essential Business.'" D.I. 3 at 2. Notwithstanding the fact that counsel filed the motion late in the afternoon of the Friday before the Memorial Day weekend, counsel stated in the motion that "[t]he religious celebration of Pentecost . . . occurs on May 31st so there is time for considered reflection by the Court before that date and no need for a hurried Temporary Restraining Order without notice." D.I. 3 at 3.

The next day, DPH withdrew the May 18th Guidance and issued new Guidance. D.I. 7, Ex. C. The May 23rd Guidance does not prohibit persons over 65 from attending religious services, Tr. 15:17 –25, 17:8–12; nor does it bar the use of choirs, microphones, or person-to-person Communion, Tr. 16:17–25, 17:8– 12, 21:9–12. It also does not limit religious services to one day per week and does not mandate that religious services last less than 60 minutes. Tr. 15:2–10. The May 23rd Guidance also allows communities of worship to hold "drive-in" and outdoor services with no limits on the number of attendees as long as certain requirements are met. D.I. 7, Ex. C at 4–5; D.I. 14 at 6.

There are, however, numerous mandatory provisions in the May 23rd Guidance. The revised Guidance, for example, prohibits "communal receptacles for congregants to bless themselves with holy water," D.I. 7, Ex. C at 3, the use of ushers to collect contributions, *id.*, and the holding of persons during their baptism, *id.* at 4. It also requires preachers to wear a "face covering or face shield" when

they preach unless doing so would imperil their health, in which case they must preach facing away from the congregation.[1]  *Id.* at 2; Tr. 38:10–14.  And it imposes requirements such as glove wearing and handwashing on individuals who prepare or distribute consecrated or blessed food.  D.I. 7, Ex. C at 3.

On the morning of Tuesday, May 26, 2020, I scheduled a telephonic argument on the pending motion and invited the Governor to submit a response to Dr. Bullock's motion and the brief filed in support of the motion.  *See* May 26th Oral Order.  The Governor filed an answering brief in opposition to the motion, D.I. 14, and I heard argument on May 28th.

## II.    LEGAL STANDARDS

Like a preliminary injunction, a temporary restraining order is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks and citation omitted).  The purpose of a temporary restraining order "is to preserve the status quo so that a reasoned resolution of a dispute may be had."  *Procter & Gamble Co. v. Bankers Tr. Co.*, 78

---

[1] The Guidance itself does not make clear that preachers are required to wear masks while preaching, but counsel for the Governor stated during oral argument that "a preacher must wear a mask or face shield while preaching, and if they cannot, then they should not face directly to the congregation when they are projecting their voice."  Tr. 38:10–14.

F.3d 219, 226 (6th Cir. 1996); *see also Hope v. Warden York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020) ("TROs are ordinarily aimed at temporarily preserving the status quo."). The Third Circuit has defined the status quo as "the last, peaceable, noncontested status of the parties." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (quotation marks and citation omitted).

To obtain a temporary restraining order, a movant "must establish that he is likely to succeed on the merits" and will "suffer irreparable harm in the absence of preliminary relief . . . ." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). If a movant can meet its burdens on the first two factors, then the court should consider two more factors: whether "the balance of equities tips in [the movant's] favor" and whether "an injunction is in the public interest." *Id.* At that point, the court should balance all four factors to determine if taken together they "favor . . . granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

## III.  ANALYSIS

I will deny Dr. Bullock's motion for a temporary restraining order for two reasons. First, the status quo that would be preserved by entry of a temporary restraining order is more restrictive than the May 23rd Guidance currently in effect. Thus, entry of a temporary restraining order would limit, not expand, Dr.

7

Bullock's freedom to exercise his religion. The "last, peaceable, noncontested status of the parties in this case" existed on May 13, 2020—the day the Committee to Save Christmas sent the Governor the Demand Letter. As of May 13th, Dr. Bullock was prohibited by the Tenth Modification from holding "under any circumstance" in-person religious services attended by more than ten people. The May 23rd Guidance similarly allows Dr. Bullock to hold in-person services limited to ten people, but unlike the Tenth Modification, the May 23rd Guidance also allows Dr. Bullock to hold in-person services in his church attended by up to 30% of the church's fire code occupancy limit if he complies with the terms of the May 23rd Guidance; and it allows him to preside over drive-in and outdoor religious services attended by an unlimited number of congregants.

Dr. Bullock states in his motion that he "seeks to preserve a status quo defined by the Fourth Modification of the State of Emergency . . ., with definition as an 'Essential Business' to operate under the relevant 'Responsibilities of an Essential Business' safety guidelines found at pages 4–5 of section 5 of that Order, which apply to 237 other 'Essential Business.'" D.I. 3 at 2. But that is not the status quo that existed as of May 13th or that has existed since the original State of Emergency Declaration was issued. On the contrary, as Dr. Bullock's counsel stated during oral argument:

> Under the fourth modification where the 237 essential businesses were identified, places of worship were listed

8

as an essential business, *but they were limited to only conducting a service with nine members of the church as well as the pastor*. Okay.

So as is [stated] in our verified complaint, the Governor admits that that virtually eliminated worship in the churches from the time of that April 7th order or whatever, whatever the fourth [Modification] is dated. Okay.

*If the ten-person limit is removed* from that order and all the subsequent orders, *then places of worship would be allowed to operate as all the other 237 entities*, such as manufacturing plants or other, other entities, and operate under the rules of wear face masks, have hand sanitizer, have clean, cleanliness, monitor if anybody is getting sick, and those things carry forward. They're in the -- they're in the CDC guidelines that were issued on the 23rd of May and they're on our church's website already. Okay.

*So when I try and identify what the status quo is*, I'm saying this *would be the status quo* in the fourth modification *but for the ten-person limit*, which carries forward.

Tr. 6:23–7:20 (emphasis added).  Thus, counsel's proposed definition of status quo is not the existing state of affairs but instead the state of affairs he believes Dr. Bullock is entitled to under the Constitution and which he hopes to achieve with this lawsuit—that is, a state of affairs in which religious organizations are treated the same as the other 237 businesses deemed essential by the Governor in the Fourth Modification.  That state of affairs, however, did not exist as of May 13th, when Dr. Bullock first objected to the status quo.

Second, Dr. Bullock has made no showing that he will be irreparably harmed if I do not issue his proposed temporary restraining order.  During

9

yesterday's teleconference, Dr. Bullock's counsel argued that his client would be irreparably harmed as a result of three restrictions imposed by the May 23rd Guidance: (1) the requirement that preachers wear a mask while preaching; (2) the requirement that the pastor (or anyone else) not hold a person during the course of the person's baptism; and (3) certain requirements that relate to the preparation and distribution of communion. Tr. 77:18–78:24. There is, however, no record evidence to support these assertions, and attorney argument cannot establish a showing of irreparable harm. *See Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 190 F. Supp. 594, 601 (S.D.N.Y. 1961), aff'd, 299 F.2d 33 (2d Cir. 1962) ("As support for a preliminary injunction the court can consider only facts presented by affidavit or testimony . . . ."); *Amato v. Elicker*, No. 3:20-CV-464 (MPS), 2020 WL 2542788, at *6 n. 6 (D. Conn. May 19, 2020) ("The Court cannot rely on factual representations in the parties' briefs to decide a motion for a preliminary injunction or temporary restraining order."); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2949 at 237 (3d ed.) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.").

The Verified Complaint alleges that Dr. Bullock's church celebrates a communion service "once a month" and holds baptisms "on a quarterly basis."

D.I. 1 ¶ 18.  But there is nothing in the Verified Complaint or in any affidavit submitted by Dr. Bullock to show that Dr. Bullock's church intended to serve communion or hold a baptism this coming Sunday, let alone that the church or its congregants would be harmed if communion service or a baptism did not occur this coming Sunday.  Nor is there any suggestion in the Verified Complaint or evidence in the record to establish that Dr. Bullock would be irreparably harmed if required to preach this Sunday wearing a mask.  Because of this failure of proof, I will deny the motion.

I note finally that my decision today has no bearing on the merits of Dr. Bullock's claims.  Those claims implicate one of our most treasured rights protected by the Constitution—the right to exercise freely one's religion.  And they implicate as well the fundamental right of a state "to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 27 (1905).  These important principles make this an important case, and my decision today will afford me the opportunity to give the case the considered reflection it deserves.

## IV.   CONCLUSION

For the reasons discussed above, I will deny Dr. Bullock's motion for a temporary restraining order.

The Court will issue an order consistent with this Memorandum Opinion.

11